## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OSMAN MINKARA, | Case No.: |
| Plaintiff, | Judge |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; AND TRANS UNION LLC; | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff Osman Minkara, ("Plaintiff") by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (collectively, "Defendants").

## INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by all Defendants.

1

2.     Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and reported information that was inaccurate and contradicted on the face of the reporting.

3.     Plaintiff also contends Defendants failed to reasonably reinvestigate Plaintiff's consumer disputes, which resulted in Defendants reporting of harmful, materially inaccurate information about Plaintiff in numerous consumer reports.

4.     Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the Defendants, and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

6.     Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

7. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

8. Plaintiff is a natural person who resides in Oakland County Michigan.

9. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian conducts business in Michigan on a routine and systematic basis. Experian can be served through its registered agent: THE CORPORATION COMPANY, 40600 ANN ARBOR RD E STE 201, PLYMOUTH, MI 48170.

11. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax conducts business in Michigan on a routine and systematic basis.

Equifax can be served through its registered agent: CSC-LAWYERS INCORPORATING SERVICE (COMPANY), 3410 BELLE CHASE WAY STE 600, LANSING, MI 48911.

12. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union conducts business in Michigan on a routine and systematic basis. Defendant Trans Union can be served through its registered agent: CSC-LAWYERS INCORPORATING SERVICE (COMPANY), 3410 BELLE CHASE WAY STE 600, LANSING, MI 48911.

13. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

14. Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees,

4

and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

15. During all times pertinent to this Complaint, all Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

16. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## RELEVANT FACTUAL BACKGROUND

17. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

18. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

5

20. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21. Defendants are the three major national consumer reporting agencies in the United States and regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

22. Defendants regularly obtain and report consumer account information, including credit and installment accounts in consumer credit reports.

23. The diligence Defendants exercise in obtaining and recording consumer information is not replicated in Defendants' reporting of subsequent information, including where disputes arise between a consumer and furnisher of consumer information.

24. Defendants' credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record

information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

25. Defendants gain access to and obtain consumer information from various sources. Some consumer information is sent directly to Defendants by furnishers, and other information is independently gathered by Defendants from third party providers/vendors or repositories, like computerized reporting services like PACER.

26. The information reported by Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

27. Most of the institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer credit reports prepared and disseminated by Defendants to make lending decisions, to offer credit, or other pre-screen offers. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's credit report, which is based on the amount of reported debt,

payment history, and the date of delinquencies contained in Defendants' consumer reports.

28.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

29.     FICO Scores factor the following credit report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b. The "amount of debt" a consumer owes has a major impact on their credit score. When a consumer reporting agency like Defendant inaccurately reports an amount of debt as outstanding, the agency is indicating that a consumer's "amount of debt" is higher than it is, which will undoubtedly impact a consumer's credit score.

8

30.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer credit reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

31.     A consumer's income, however, is not included in their credit report; only their amount of debt is.

32.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit, and the credit terms will be worse (e.g., higher interest, lower credit limits).

33.     Defendants regularly publish consumer information that contains conflicting information, facial inconsistencies, and materially misleading classifications of consumer tradeline information.

34.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report consumer information that is knowingly incomplete, and facially inconsistent.

35.     Defendants' unreasonable procedures result in the Defendants' routine reporting of either patently inaccurate or materially misleading information about consumers like Plaintiff.

36.     Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating the

information as required by § 1681e(b), despite possessing information inconsistent with furnished information that establishes that the furnished/reported information is inaccurate.

37. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for inaccurate or otherwise materially misleading consumer credit reports where disputes have arisen that are substantiated by consumers like Plaintiff but nevertheless continue to be inaccurately reported.

38. Thus, Defendants are on continued notice of their inadequate and unreasonable procedures for reporting consumer information in the first instance, and for failing to reasonably reinvestigate disputes that are substantiated by the consumer.

*Plaintiff's Chrysler Financial Lease*

39. Plaintiff leased a personal automobile from Chrysler that commenced in or about July 2022 (partial account number: ***89761) (the "Chrysler Lease"). The duration of the lease was for approximately 36 months and Plaintiff's monthly payment for the Chrysler Financial automobile lease was $801.82 per month.

40. Plaintiff's Chrysler Lease was originally set to conclude on or about July 23, 2025. However, Plaintiff and Chrysler Financial agreed to a 2-month extension of Plaintiff's Chrysler Lease. Chrysler indicated that it would provide

Plaintiff with a formal Lease Extension Agreement (the "Lease Extension Agreement").

41.     After the Lease Extension Agreement was entered, and in furtherance of the Chrysler Lease, Plaintiff submitted a payment of $801.82 on August 12, 2025, which encompassed the original lease end payment for July 2025.

42.     Thereafter, Chrysler Financial's payment portal reflected that Plaintiff remained current with no outstanding payments or late statuses.

43.     Indeed, as of August 31, 2025, Chrysler confirmed Plaintiff was "Current" on the account with an amount of $170.26 due by September 23, 2025. Below is a screenshot of a "Lease Statement" Plaintiff received from Chrysler dated August 31, 2025 (address and partial account number redacted).



44.     Thus, Plaintiff was not 30-days late in August 2025 (much less 60-days late in September 2025).

11

45. On October 2, 2025, Plaintiff made an additional payment of $1,773.90, which encompassed the remaining lease payments as well as "other fees and charges" of $170.26.

46. Plaintiff returned the vehicle to Chrysler in October 2024 seemingly without issue until Defendants' grossly inaccurate reporting.

47. Thereafter, In January 2025, Plaintiff was shocked to discover that Defendants were reporting that Plaintiff was 30 and 60 days late for the months of August and September 2025—with each reporting **inaccurate and conflicting information to boot**.

*Defendants' Reporting of Plaintiff's Chrysler Financial Lease Account*

48. Defendants report various categories of information pertaining to auto lease accounts like the Chrysler Financial Account, including the account type, duration of the account/lease, high or original balance, monthly payment, date of last payment, outstanding balance, months reviewed, and comments.

49. In this case, Defendants each reported incomplete, facially inconsistent, and otherwise materially misleading information about Plaintiff's Lease Account pre- and post-dispute by Plaintiff caused by their unreasonable procedures and failure to reasonably reinvestigate Plaintiff's (substantiated) disputes.

50. Experian reported the Chrysler Lease Account as a 36-month auto lease that commenced in July 2022 (under "Santander/Chrysler Cap" tradeline).

51.     Experian reported Plaintiff's history of payments, status, and balance, on the Chrysler Lease Account but did so inaccurately and inconsistent with information that conflicted with its own reporting and the reporting by the other Defendant consumer reporting agencies.

52.     Experian inaccurately reported that the account remained open and with an outstanding balance of $3,415.00.

53.     Experian also inaccurately reported that Plaintiff was 30 and 60 days late in August and September 2025, respectively.

54.     Thereafter, Experian reported that Plaintiff was current, while also reporting that the account remains open and that Plaintiff still owes $100.00 on the account, both of which are not true.

55.     Experian also continues to report the Chrysler Lease Account beyond the reported installment/lease term even though Plaintiff made all monthly payments.

56.     Experian's reporting is inaccurate and materially misleading on its face as to Plaintiff's payment history, and the balance and status of the Lease Account.

57.     Equifax likewise reported that the Chrysler Lease Account commenced in or about July 2022.

58.     Equifax also reported Plaintiff's reported Plaintiff's history of payments, status, and balance on the Chrysler Lease Account but did so inaccurately

and inconsistent with information that conflicted with its own reporting and the reporting by other Defendant consumer reporting agencies.

59.     Equifax inaccurately reported that the account remained open and with an outstanding balance (most recently $3,415.00 as of March 2026).

60.     Equifax also inaccurately reported that Plaintiff was 30 and 60 days late in August and September 2025, respectively.

61.     Thereafter, Equifax reported that Plaintiff was current, while also reporting that the account remains open and that Plaintiff still owes $3,415.00 on the account, both of which are not true.

62.     Equifax also continues to report the Chrysler Lease Account beyond the reported installment/lease term even though Plaintiff made all monthly payments.

63.     Equifax's reporting is inaccurate and materially misleading on its face as to Plaintiff's payment history, and the balance and status of the Lease Account.

64.     Trans Union likewise reported that the Chrysler Lease Account commenced in or about July 2022.

65.     Trans Union also reported Plaintiff's history of payments, status, and balance on the Chrysler Lease Account but did so inaccurately and inconsistent with information that conflicted with its own reporting and the reporting by the other Defendant consumer reporting agencies.

66.     Trans Union also inaccurately reported that the account remained open and with an outstanding balance (most recently $3,415.00 as of March 2026).

67.     Trans Union also inaccurately reported that Plaintiff was 30 and 60 days late in August and September 2025, respectively.

68.     Thereafter, Trans Union reported "X" (no data) while also reporting that the account remains open and that Plaintiff still owes $3,415.00.00 on the account, both of which are not true.

69.     Trans Union also continues to report the Chrysler Lease Account beyond the reported installment/lease term even though Plaintiff made all monthly payments.

70.     Trans Union's reporting is inaccurate and materially misleading on its face as to Plaintiff's payment history, and the balance and status of the Lease Account.

71.     Each of the Defendants reported separate inaccurate information that is not only inconsistent with Defendants' respective reports, but also inconsistent on the face of the reported information as described above.

72.     These inaccuracies are the product of Defendants' unreasonable procedures allowing furnishers like Chrysler Financial to override the correct reporting of lease payments in connection with a lease end and extension or in circumstances where the furnisher either seeks payment of an additional sum of

money that is separate and distinct from the installment payments. This results in the paradoxical reporting of a fully terminated lease continuing to be reported as open or with an alleged balance when the lease has ended and no remaining obligations remain.

73.     Defendants reported inaccurate information—numerous inaccuracies—including a purported 30-and 60-day late history and an ongoing balance and open account (when none of the foregoing is true).

74.     As such, Defendants report inaccurate and materially misleading information about consumers like Plaintiff who make all payments under their lease agreements, but do not receive the benefit of these payments or the end of the installment agreement through accurate credit reporting.

*Plaintiff's Dispute of the Inaccurate Chrysler Financial Lease Account*

75.     In or about January 2026, Plaintiff sent letters to Defendants, Experian, Equifax, and Trans Union disputing their inaccurate/materially misleading reporting of the Chrysler Financial Lease Account.

76.     The dispute letters specifically informed Defendants that the Chrysler Lease Account was inaccurate (e.g., the reported information, late payments, balance and other account information).

77.     Plaintiff further informed Defendants that he made all payments under the Chrysler Financial Lease Account (which Defendants already knew).

16

78.     To assist Defendants' reinvestigation, Plaintiff attached to his dispute copies of materials substantiating that the payments to Chrysler Financial were made, that Plaintiff was not past due/late during the reported periods, and that Plaintiff did not owe a continuing balance on the Lease.

79.     Plaintiff also informed Defendants that they could contact him by telephone should they require anything further and provided his contact information to Defendants.

80.     Defendants received Plaintiff's dispute letters.

81.     Upon information and belief, Defendants forwarded Plaintiff's disputes to Chrysler Financial within 5 business days of receipt, as required by the FCRA.

82.     Upon information and belief, Chrysler Financial received Plaintiff's disputes from the CRAs.[1]

83.     However, Defendants refused to correct the reported inaccuracies after Plaintiff's disputes, even though Plaintiff provided information that directly contradicted Defendant's reported inaccuracies.

84.     Instead of correcting the inaccuracies, Defendants continued to report the inaccuracies described above as of March 2026.

85.     In addition, Equifax does not appear to have investigated Plaintiff's

---

[1] Chrysler Financial is not currently a named Defendant because an arbitration agreement appears to encompass the claims asserted herein.

17

dispute and did not correct the disputed inaccuracies.  Even if it had, Equifax's reinvestigation was unreasonable and its continued inaccurate reporting cannot be reconciled with the information Plaintiff provided to substantiate his dispute.

86.     Trans Union also does not appear to have investigated Plaintiff's dispute or to have provided a dispute response to Plaintiff. Regardless, Trans Union did not correct the disputed inaccuracies.  Even if it had, Trans Union's reinvestigation was unreasonable and its continued inaccurate reporting cannot be reconciled with the information Plaintiff provided to substantiate his dispute.

87.     Experian still reports an inaccurate balance owed, refuses to correct the disputed account history, and still inaccurately reports the Lease as open.

88.     Defendants did not investigate Plaintiff's disputes (reasonably or otherwise), and, pursuant to their unreasonable procedures, merely parroted information from the furnisher, or relied upon historical account information possessing independent information and materials indicating that they were inaccurately reporting the Chrysler Financial Lease Account, including information previously furnished to them, the facial inconsistencies and illogical information each reported, and the information Plaintiff provided to substantiate his disputes and confirm that he made all of the lease term payments.

89.     Defendants could have independently verified and substantiated Plaintiff's dispute of the reported inaccuracies but failed to do so.

90.     Rather than perform an investigation based on Plaintiff's dispute, the information Plaintiff provided, reasonably available information, and/or information known or that should have been known by Defendants, these Defendants merely parroted information furnished by Chrysler despite actual knowledge that the information was factually inaccurate, illogical, and conflicted with information known by Defendants.

91.     All Defendants reported inaccuracies regarding the amounts Plaintiff paid under the Chrysler Financial Lease Account, the amount Plaintiff allegedly owed, and the history and status thereof.

92.     Defendants failed to accurately report the Chrysler Financial Lease Account.

93.     Defendants' reporting of the Chrysler Financial Lease Account is patently false/incorrect and therefore inaccurate.

94.     If not patently false/incorrect, Defendants' reporting of the Chrysler Financial Lease Account is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

95.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a markedly decreased credit score, lower overall creditworthiness, and other financial harm.

96. Plaintiff also suffers damages through the publication of inaccurate information concerning his financial standing, including publication in response to credit inquiries.

97. Plaintiff has also suffered lost/wasted time obtaining necessary information and disputing the inaccurate information, as well as the associated time, labor, and expense of requesting information and mailing disputes.

98. Plaintiff suffered interference with daily activities, including his profession/employment.

99. Plaintiff also suffered emotional distress, including, without limitation, emotional and mental anguish, embarrassment/humiliation, stress, anger, frustration, and loss of sleep.

### COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681i

100. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

101. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

102. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

103. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

104. The FCRA requires consumer reporting agencies, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

105. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to Plaintiff's Chrysler Financial Lease Account.

106. Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who make all required lease payments but are not credited with the benefit of a complete, accurate, and non-misleading account of their automobile leases, including where furnishers co-mingle non-installment fees and charges, whether substantiated or not, or disputed or not.

107. Defendants routinely report inaccurate, and materially misleading information about consumers like Plaintiff, without verifying the accuracy of this

21

information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information and possesses information establishing that the reported information is in fact inaccurate.

108. Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

109. Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update inconsistent and/or illogical tradeline information as required by § 1681(e)(b).

110. Defendants know the information they report about consumer automobile leases is often illogical, facially inconsistent, inconsistent with furnished information, and/or information contained in Defendants' own files.

111. Defendants knew or should have known of its obligations under the FCRA, especially pertaining to reporting installment accounts/automobile leases. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of commingled charges and inaccurate/inconsistent payment history information.

112. Additionally, Defendants has obtained or has available substantial written materials that apprised Defendants of relevant duties and obligations mandated by the FCRA.

113. Therefore, Defendants had ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

114. In this case, Defendants reported information about Plaintiff's Chrysler Financial Lease Account that was patently false, facially inconsistent, illogical, and materially misleading.

115. When Defendants procured and published Plaintiff's Chrysler Financial Lease Account information, they had an obligation to ensure they followed reasonable procedures to accurately report the Chrysler Financial Lease Account with maximal accuracy and in a non-misleading way.

116. Despite knowledge of these legal obligations, Defendants acted willfully by consciously breaching known duties and deprived Plaintiff of his rights under the FCRA.

117. Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's credit file/consumer disclosure.

118. Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information

23

Defendants are reporting is inaccurate, inconsistent, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

119.   Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

120.   Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

121.   Even after Plaintiff notified Defendants of the inaccurate information it included in Plaintiff's credit file, which included proof of Plaintiff's payments on the Chrysler Financial Lease Account installments, and the lease agreement, Defendants continued to inaccurately report the Account with an outstanding balance, despite actual notice by Plaintiff

122.   However, the Defendants further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, Defendants possessed the information to independently verify and confirm the inaccuracies Plaintiff disputed.

123.   In addition, when a consumer disputes the accuracy or completion of information included in a consumer reporting agency's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

124. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

125. Additionally, the consumer reporting agency must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the consumer reporting agency is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

126. Defendants continued to blindly rely on inaccurate information provided by the furnisher despite possessing information that directly conflicted with the information provided by Plaintiff.

127. Defendants also had reason to know that the furnished information was inaccurate or otherwise unreliable on the face of the reporting.

128. Defendants did not undertake any action to ensure that information received from the furnisher was accurate or reliable.

129. Defendants possessed information provided by Plaintiff that directly contradicted the furnishers reporting of Plaintiff's account including the alleged past due status and amount.

130. Yet despite knowledge of the information's unreliability, Defendants made no independent effort to verify its accuracy.

25

131. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendants additionally violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified Defendants of the inaccurate information reported in Plaintiff's credit file.

132. Defendants Experian, Equifax, and TransUnion's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a)   Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)   Failing to consider all relevant information while investigating Plaintiff's dispute.

(c)   Failing to include all relevant information when notifying the furnisher Chrysler of Plaintiff's dispute.

133. Instead of reasonably reinvestigating Plaintiff's dispute, the consumer reporting agency Defendants Experian, Equifax, and TransUnion simply parroted further inaccuracies without investigating as required.

134. Defendants' acts, as described above, were done willfully and knowingly.

135. Alternatively, Defendant's violations of 15 U.S.C. §§ 1681e(b) and/or 1681i was negligent.

136.   Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

137.   Plaintiff suffered actual damages, including loss of credit opportunity, personal humiliation, and a chilling effect on his application for needed credit

138.   Plaintiff also suffered, and continues to suffer, interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, loss of sleep, anger, frustration, shock, embarrassment, and anxiety.

139.   Defendants are a direct and proximate cause of Plaintiff's damages.

140.   Defendants are a substantial factor in Plaintiff's damages.

141.   Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)   Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

### JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

**RESPECTFULLY SUBMITTED** this 3rd day of April 2026.

HADOUS|CO. PLLC

/s/Nemer N. Hadous
Nemer N. Hadous (P82285)
1 Parklane Blvd., Suite 729 East
Dearborn, Michigan 48126
Telephone: (313) 415-5559
E-mail: nhadous@hadousco.com
Attorneys for Plaintiff

28